**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | |
|---|---|
| STEPHEN R. HARDING,<br><br>Plaintiff,<br><br>vs.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>Defendant. | No. C25-8-LTS-MAR<br><br>**MEMORANDUM OPINION AND ORDER** |

## *I. INTRODUCTION*

This case is before me on an amended motion (Doc. 36) for summary judgment filed by defendant Union Pacific Railroad Company (Union Pacific). Union Pacific has also filed an amended statement of material facts (Doc. 36-1), a supporting brief (Doc. 36-2) and an appendix (Docs. 36–3 to 36-8). Plaintiff Stephen R. Harding has filed a resistance (Doc. 42) along with a statement of additional material facts (Doc. 42-1) and an appendix (Docs. 42-2 to 42–11). Union Pacific's reply (Doc. 44) includes a supplemental appendix (Docs. 44-1 to 44-8) and a response (Doc. 44-9) to Harding's statement of additional material facts. Union Pacific requests oral argument, but I find it unnecessary. *See* LR 7(c).

## *II. SUMMARY JUDGMENT STANDARDS*

Any party may move for summary judgment regarding any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact means "sufficient evidence support[s] the claimed factual dispute" to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248–49. The moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and, through depositions, affidavits or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). If a party fails to establish the existence of an essential element of a claim or defense when they would bear that burden of proof at trial, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining whether there is a genuine issue of material fact, I view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88. I must further give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the non-moving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376–77 (8th Cir. 1996).

## *III. UNDISPUTED FACTS*

Union Pacific is a common carrier engaged in interstate transportation. Doc. 42-2 ¶ 1. Harding began working for the company in 2004. *Id.* ¶ 6. From 2019 to February 2022, with small gaps, Harding worked as a conductor[1] on a sidetrack servicing a Quaker Oats facility. *Id.* ¶¶ 15–19. His job included moving railcars, requiring that he mount and dismount the cars.

On February 19, 2022, Harding was dismounting a railcar at the Quaker Oats facility onto ground that he described as looking stable, but that happened to be "all mushy and, like, loose." Doc. 44-9 ¶ 7. When he stepped off the railcar, he felt the ballast give way and a pop in his left calf. Doc. 36-3 at 23; Doc. 42-2 ¶ 62. Although he did not initially feel pain, when he took his next step his "leg just wasn't working" so he "just kind of dropped down." Doc. 44-2 at 3–4. His resulting calf strain[2] prevented him from returning to work for six months, until August 2022. *Id.* ¶ 20. Harding later treated with Dr. Ekroth from December 14, 2022, to February 22, 2024, and Dr. Maurus

---

[1] The parties use "conductor" as a category enveloping brakemen, switchmen and yardmen for present purposes. Doc. 42-2 ¶ 10.

[2] Harding elsewhere describes the injury as a muscle tear. *See* Doc. 42-7.

from February 8, 2024, to March 26, 2025. *Id.* ¶¶ 100, 103. Both treating doctors testified how Harding's injury could have been caused several ways, including stepping onto unstable, shifting ground. Doc. 38-16 at 3, 11.

In January 2025, Harding filed his lawsuit under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60. He alleges that the calf strain he sustained was caused by general negligence or negligence per se through a violation of the Federal Railroad Administration (FRA) regulations. Doc. 1.

## *IV. ANALYSIS*

FELA holds railroad employers liable for injuries an employee suffered "in whole or in part from the negligence" of the railroad. 45 U.S.C. § 51. Meant to open more opportunities for railroad employees to recover for injuries at work, FELA is construed liberally "to further Congress' remedial goal." *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994); *accord Kernan v. Am. Dredging Co.*, 355 U.S. 426, 432 (1958). It imposes a continuous, nondelegable duty on employers to provide a reasonably safe workplace. *Shenker v. Balt. & Ohio R.R.*, 374 U.S. 1, 7 (1963); *Cowden v. BNSF Ry. Co.*, 690 F.3d 884, 889 (8th Cir. 2012). Similarly, it applies "a relaxed standard of causation," requiring "that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Gottshall*, 512 U.S. at 543 (citing *Rogers v. Mo. Pac. R.R.*, 352 U.S. 500, 506 (1957)); *accord CSX Transp., Inc. v. McBride*, 564 U.S. 685, 691 (2011) ("FELA's language on causation . . . 'is as broad as could be framed.'" (quoting *Urie v. Thompson*, 337 U.S. 163, 181 (1949)).

However, FELA is not "a workers' compensation statute" and "does not make the employer the insurer of the safety of his employees while they are on duty." *Gottshall*, 512 U.S. at 543. Therefore, the fact an injury occurred does not give rise to a remedy. *Ellis v. Union Pac. R.R.*, 329 U.S. 649, 653 (1947); *see also Magelky v. BNSF Ry. Co.*, 579 F. Supp. 2d 1299, 1304 (D.N.D. 2008) ("To prevail on a FELA claim, a plaintiff

must generally prove the traditional common law components of negligence which include duty, breach of duty, causation, injury, and damages.”).

A jury trial is “part and parcel of the remedy afforded railroad workers under [FELA].” *Dice v. Akron, Canton & Youngstown R.R.*, 342 U.S. 359, 363 (1952) (citing *Bailey v. Cent. Vt. Ry. Inc.*, 319 U.S. 350, 354 (1943)). In that respect, “the jury’s power to engage in inferences must be recognized as being significantly broader than in common law negligence actions.” *Chi., Rock Island & Pac. R.R. v. Melcher*, 333 F.2d 996, 999 (8th Cir. 1964). Given the jury’s role in FELA cases, it must be utilized “in all but the infrequent cases where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee’s injury.” *Rogers*, 352 U.S. at 510; *accord Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158, 179 (2007) (Ginsburg, J., concurring in judgment) (“[A] FELA plaintiff can get to a jury if he can show that his employer’s negligence was even the slightest cause of his injury.”).

Harding’s theory is that Union Pacific breached its duty to provide a safe work environment by failing to adequately inspect and maintain its ballast, resulting in loose ground that directly and foreseeably caused Harding’s calf strain. Union Pacific challenges Harding’s theory as to breach and causation.

An employer’s duties are sourced from two areas: the typical standard of care and from statute and regulation. *Kernan*, 355 U.S. at 432. Employers must exercise ordinary care in providing a reasonably safe workplace and warn their employees of unsafe working conditions. *See Martinez v. Union Pac. R.R.*, 82 F.3d 223, 228 (8th Cir. 1996) (“FELA does not require an employer to exercise the highest degree of care, but only the same degree of care as an ordinary, reasonable person would exercise in similar circumstances.”); *Ackley v. Chi. & Nw. Transp. Co.*, 820 F.2d 263, 266 n.5 (8th Cir. 1987) (listing duties that “have become integral parts of the FELA”). Promulgated regulations under the Federal Railroad Safety Act, 49 U.S.C. § 20103, by the FRA, 49 U.S.C. § 103; 49 C.F.R. § 1.89 (2026), further delineate more specific obligations an employer has to their employees.

The record contains no evidence that Union Pacific had actual knowledge of the defective ballast conditions. Instead, the dispute centers on Union Pacific's constructive knowledge of the condition: whether it reasonably should have known about the ballast. Union Pacific argues that the loose ground was latent, unknown to the company and not reasonably discoverable, which matters because "the employer's duty under FELA to maintain a safe workplace turns in a general sense on the reasonable foreseeability of harm. Thus, an employer is not liable if it had no reasonable way of knowing about the hazard that caused the employee's injury." *Peyton v. St. Louis Sw. Ry. Co.*, 962 F.2d 832, 833 (8th Cir. 1992) (citation omitted).

To this end, Union Pacific states that it concurrently maintained the track with Quaker Oats. Joshua Foster, a Manager of Terminal Operations (MTO) for Union Pacific, was responsible for physically inspecting the sidetrack twice a month for safety issues and received feedback from employees regarding safety concerns. Doc. 42-2 ¶¶ 72, 75, 79. He would further seasonally remind Quaker Oats that it was responsible for maintaining the track and ensuring that walking conditions were favorable. *Id.* ¶ 77–78. None of these precautions revealed concerns with the ballast that winter to Foster or another company MTO, Benjamin Klaus. *Id.* ¶¶ 81, 91–94. Nor were there previous instances of the ballast suddenly giving way such that the issue was a recurring one. *Id.* ¶ 80, 92.[3] Moreover, Foster walked the sidetrack the day of Harding's injury, after it

[3] Similar incidents need not occur for a railroad to be on constructive notice of an issue, but it is still relevant. Harding points to *Gallick v. Baltimore & Ohio R.R.*, 372 U.S. 108 (1963), to disagree, but *Gallick* is inapposite. There, a stagnant pool that the railroad had "long been aware of" attracted insects to the area and one insect bit an employee's leg, leading to its amputation. *Id.* at 109. In upholding the jury's verdict for the employee, the Court rejected the railroad's claim that because this was the first insect bite, the railroad could not have foreseen the specific injury. Rather, because the railroad knew about the pool and that the water would attract insects, it was foreseeable that an insect bite might occur in the pool's vicinity to establish breach and causation. The fact that the railroad did not anticipate a bite requiring amputation was of no consequence. *Id.* at 119–21. Here though, the dispute is whether Union Pacific reasonably could have known about the defective ballast condition, not whether the known ballast defect

had occurred, and still failed to detect any sinking or uneven ground. *Id.* ¶¶ 81–85. This lines up with Harding's own testimony admitting that the ground "appear[ed] to be stable" up until he stepped off the railcar onto it. Doc. 44-9 ¶ 7. In all, I find the record satisfies Union Pacific's initial burden of showing a lack of a genuine issue of material fact. *See Hartnagel*, 953 F.2d at 395.

As such, Harding must show a genuine dispute in the record as to the reasonability of Union Pacific knowing about the loose ballast. *Cf. Miller v. Union Pacific R.R.*, 972 F.3d 979, 986 (8th Cir. 2020). To do this, Harding (1) relies on Foster's admission that "a properly inspected and maintained ballast typically [does not] suddenly give out," Doc. 44-9 ¶ 9, (2) accuses Union Pacific of improperly delegating its inspection duties to Quaker Oats, *id.* ¶ 10, (3) cites his own testimony that track inspections and audits should have discovered the defect, Doc. 35-3 at 39, and (4) refers to photos of the sidetrack that purportedly "show loose, small, and sparse ballast." Doc. 44-9 ¶ 12.

Harding's supposition that a proper inspection would have uncovered the defect has no evidentiary value, as he has no background in track inspections. *See* Doc. 42-5 at 3–4. His statement is nothing more than his insistence that an inspection should have found the defect. As Harding has neither personal experience nor expertise regarding track inspections, he is not qualified to make the statement and it is therefore irrelevant. *See Brooks v. Tri-Systems, Inc.*, 425 F.3d 1009, 1112 (8th Cir. 2005) ("[D]eposition testimony must . . . be admissible to be considered in ruling on a motion for summary judgment.").

Similarly, the photos do not give rise to a genuine issue of fact. They were taken a month after the incident, even if the parties accept that they capture similar conditions to how the sidetrack appeared at the time of the accident. *See* Doc. 42-2 ¶ 83. There is

---

could cause Harding's calf strain. At the least, the fact that no injuries had previously resulted from the ballast prevents Harding from establishing constructive notice based on past circumstances that would have made Union Pacific privy to a persistent problem.

further a stark disconnect between the pictures and Harding's theory of the case. Harding insists that the ballast conditions were hidden, such that everything appeared normal up until he stepped off onto the ballast and discovered it was loose. He frames the photos, however, as capturing observably "loose, small, and sparse ballast."[4] How the photos support Harding's theory of the case is unclear when the cause of the accident is alleged to have been hidden.

That leaves Foster's statement that a properly inspected and maintained ballast probably would not slip out from under someone, supplemented by Foster's and Klaus' testimonies that Quaker Oats was "responsible for the conditions of the Quaker industry track." Doc. 44-9 ¶¶ 9–10. Harding challenges whether Union Pacific had properly overseen maintenance of the sidetrack. Although true that Quaker Oats owns the property, "a railroad [company] has the nondelegable duty to provide its employees with a safe place to work even when they are required to go onto the premises of a third party over which the railroad has no control." *Shenker*, 374 U.S. at 7; *accord Lockard v. Mo. Pac. R.R.*, 894 F.2d 299, 303 (8th Cir. 1990). Thus, even if Union Pacific outsourced some of its inspections to Quaker Oats, it remains ultimately responsible for the safety of the track. Accordingly, any shortfalls with Quaker Oats' monitoring the sidetrack fall on Union Pacific. Yet nobody with Union Pacific could speak to Quaker Oats' inspections or maintenance of the sidetrack. *See* Doc. 35-6 at 3; Doc. 42-6 at 3. Because a properly inspected and maintained ballast does not typically give out, according to Foster, and Union Pacific at least partially passed on responsibility of overseeing the sidetrack to Quaker Oats, Harding contends that there is a jury question whether Quaker Oats fell short of the duty it performed on Union Pacific's behalf. Implicit in this reasoning is that Union Pacific's independent inspections of the track were also insufficient.

---

[4] I add also that no record evidence supports Harding's description beyond his conclusory assertion, which is contradicted by other portions of the record. *See* Doc. 42-2 at ¶¶ 86, 95.

There are gaps in Harding's logic. For one, it inverts cause and effect by pointing to Harding's injury as proof of negligence. Despite his injury, there is no record evidence explaining what a "proper" inspection would look like, including the additional or alternative steps Union Pacific should have taken to comply with its duties.[5] In addition, even assuming Union Pacific's inspections were sub-standard, Harding's case falters at causation—even with the atypical flexibility in FELA cases. The record contains no admissible evidence suggesting that a reasonable inspection would have discovered the latent ballast defect. Similar problems have doomed other FELA cases. *See, e.g.*, *Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330 (4th Cir. 1998) ("Deans introduced no evidence to show that an earlier inspection would have revealed or cured the problem with the hand brake, or that the railroad had notice of the defect prior to the accident."); *Williams v. Nat'l R.R. Passenger Corp.*, 161 F.3d 1059, 1063 (7th Cir. 1998) ("Although Amtrak's duty to provide a safe workplace contemplates reasonable inspections of equipment and appliances, Williams had the burden of showing that Amtrak could have discovered a defect with the door and remedied the situation."); *Brzinksi v. Ne. Ill. Reg'l Commuter R.R.*, 892 N.E.2d 1142, 1146 (Ill. App. Ct. 2008) ("[T]here is nothing in the record establishing how long the sinkhole existed or that any inspections Metra could have conducted would have detected its existence.").

In fact, the record in this case indicates that a reasonable inspection would not uncover the allegedly defective condition. Foster's uncontroverted and unchallenged testimony is that after Harding's injury, and on the same day, he "looked closely" at the ballast but could not discern any problems with it. Doc. 42-2 ¶ 84. Turning back to the fact that—by all accounts—the ballast defect was hidden, and nothing in the record

[5] Harding argues that Occupational Safety and Health General Standards are relevant considerations toward the railroad company's expected standard of care. *See, e.g.*, *Robertson v. Burlington N.R.R.*, 32 F.3d 408, 410–11 (9th Cir. 1994) ("OSHA standards may be admitted in a[] FELA case as some evidence of the applicable standard of care."). However, Harding fails to explain how those standards imposed a duty that Union Pacific fell short of executing.

develops how an inspection would uncover the defect, Harding falls short of establishing a genuine dispute of material fact that requires a jury weigh the evidence.

The same problems that support summary judgment on Harding's negligence claim preclude his negligence per se claim. For purposes of this motion, Union Pacific concedes that the sidetrack is a part of the "general railroad system of transportation" that makes it subject to the regulations in 49 C.F.R. pt. 213. *See* Doc. 44 at 4 (citing *Sapp v. CSX Transp., Inc.*, 478 F. App'x 961 (6th Cir. 2012)). But Harding fails to present evidence speaking to Union Pacific's alleged breach of any regulatory duty. Harding's first cited regulation requires that drainage adjacent to a roadbed must be maintained and kept free of obstructions to accommodate expected waterflow. 49 C.F.R. § 213.33 (2026). Nothing in the record suggests that the sidetrack had drainage issues. Indeed, Harding did not see standing water in the area on the day of the incident and Foster never witnessed water pooling at or near the sidetrack. Doc. 42-2 ¶¶ 67–68, 87.

The second cited regulation establishes rules for visually inspecting the track. 49 C.F.R. § 213.233(b). But again, there is no evidence establishing that an inspection would have discovered the hidden ballast defect and it is uncontroverted that Foster did physically inspect the sidetrack twice a month. *See* Doc. 42-2 ¶ 75. Union Pacific is entitled to summary judgment on Harding's negligence per se.[6]

---

[6] Separately, Union Pacific contends that summary judgment is proper because Harding cannot medically link the shifting ballast to his injury. Harding has not designated an expert to testify on the subject. His two treating physicians could not conclusively say the shifting ballast is what caused his calf injury even though the injury was consistent with how Harding described events. Doc. 42-2 at ¶¶ 101–07. When an injury has "no obvious origin, 'expert testimony is necessary to establish even that small quantum of causation required by FELA.'" *Brooks v. Union Pac. R.R.*, 620 F.3d 896, 899 (8th Cir. 2010) (quoting *Claar v. Burlington N.R.R.*, 29 F.3d 499, 504 (9th Cir. 1994)). However, in this case the causal link is sufficiently obvious. Harding has described the specific circumstances surrounding his injury. He stepped off a railcar, felt the ground shift and a pop in his calf. Despite not feeling any initial pain, during his next step he "just kind of dropped down" because his leg was not working. Doc. 44-2 at 4. Based on this evidence, there is a nexus sufficient for a jury to infer the calf strain was caused by the loose ballast. While I have found that Union Pacific is entitled to summary judgment on other grounds, I reject its alternative argument concerning the lack of a causal link.

## *V. CONCLUSION*

For the reasons set forth herein:

1. Defendant Union Pacific Railroad Company's amended motion (Doc. 36) for summary judgment is **granted in its entirety**. All claims asserted by plaintiff Stephen R. Harding are hereby **dismissed**.

2. Judgment **shall enter** against plaintiff and in favor of defendant.

**IT IS SO ORDERED** this 26th day of October, 2026.

Leonard T. Strand
United States District Judge